IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRENDA J. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-10-059-FHS-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

The claimant Brenda J. Smith requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on July 20, 1964, and was forty-eight years old at the time of the administrative hearing. She has a degree in nursing (Tr. 39-40) and has worked as a registered nurse, a cashier and a technical support representative (Tr. 25). The claimant alleges she has been unable to work since March 18, 2007 due to bipolar disorder, depression, anxiety, asthma, hernia and sinus allergies (Tr. 17, 125).

### Procedural History

On March 26, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Osly F. Deramus conducted a hearing and determined that the claimant was not disabled in a decision dated September 22, 2009. On review, the Appeals Council found error in the ALJ's step four determination that the claimant could return to her past relevant work as a cashier, but nevertheless determined that she was not disabled at step five because there was other work she could perform under Soc. Sec. Rul. 85-15 (Tr. 5). Thus, the Appeals Council's decision constitutes the final decision of the Commissioner for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Appeals Council

The Appeals Council adopted the ALJ's findings through step three (including his step two finding that the claimant's bipolar disorder was a severe impairment) as well as his step four determination of the claimant's residual functional capacity (RFC), *i. e.*, that she could perform the full range of work at all exertional levels, limited to: performing simple and some complex tasks, relating to others on a superficial basis and adapting to a work situation (Tr. 5, 21). The Appeals Council rejected the ALJ's step four finding that the claimant could return to her past relevant work as a cashier because the Dictionary of Occupational Titles (DOT) indicates that a cashier must have "contact with others beyond receiving instructions," *i. e.*, more than the superficial contact with others allowed by the claimant's RFC (Tr. 5). But the Appeals Council nevertheless concluded at step five that the claimant was not disabled, because Soc. Sec. Rul. 85-15 "provides that a significant number of unskilled light exertional occupations exist within the national economy that the claimant is capable of performing, as this work requires dealing with things, rather than people or data." (Tr. 5, 6).

## Review

The claimant contends that the Appeals Council erred in adopting findings by the ALJ that were themselves erroneous. The claimant contends that the ALJ erred by: (i) failing to properly evaluate the opinion of her treating physician, Dr. Richard Zielinski; and, (ii) failing to properly analyze her credibility. The undersigned Magistrate Judge finds the claimant's first contention persuasive.

The claimant began receiving treatment at Mental Health Services of Southern Oklahoma in March 2005 at which time, claimant was diagnosed with bipolar disorder and noted to have a GAF of 55 (Tr. 276).  In a client assessment record dated March 7, 2005, claimant was described as having no energy, a loss of interest in activities, and excessive worrying and anxiety which reduced claimant's productivity 3-4 days per week (Tr. 297).  In addition, claimant reported a dysfunctional family, a history of methamphetamine and marijuana use, and difficulty with keeping a job because of her depression symptoms (Tr. 297-98).  In August 2005, the claimant's progress notes reveal that while she was making some progress, she was anxious with a tense affect, confusing, and difficult to follow (Tr. 307).  Claimant's March 2006 assessment found her to be experiencing moderate to severe limitations in the following domains: 1) feeling/mood affect; 2) thinking/mental process; 3) medical/physical; 4) family; 5) interpersonal; and 6) role performance.  In June 2006, the claimant attended an individual counseling session during which she was noted to be "fidgety with flat affect, trying to use humor to manage sadness, [and] mumbling at times" (Tr. 304).  In documentation from September 2006, it was noted that claimant's "emotional symptoms of anxiety and depression continue to compromise memory, logical processing, concentration and contribute to poor impulse control 1 to 3 times a week" (Tr. 404).  Though she had made some progress, she was still found to be experiencing moderate to severe limitations in the following domains: 1) feelings/mood/affect; 2) thinking/mental process; 3) medical/physical; 4) family; 5)

interpersonal; and 6) role performance.  By October 2007, the claimant was still suffering from moderate to severe limitations in the same domains (Tr. 421-28).

On October 27, 2007, Dr. Richard Zielinski, M.D. of the MHSSO (who was also claimant's supervising physician) completed a Medical Source Statement-Mental, and opined that claimant was moderately limited in a number of areas, including, *inter alia*, the ability to understand and remember very short and simple instructions, the ability to carry out detailed instructions, the ability to make simple work-related decisions, and the ability to maintain socially appropriate behavior (Tr. 430-31).  Dr. Zielinski also wrote that claimant was markedly limited in the following areas: 1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 2) the ability to work in coordination with or proximity to others without being distracted by them; 3) the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 4) the ability to interact appropriately with the general public; 5) the ability to ask simple questions or request assistance; 6) the ability to accept instructions and respond appropriately to criticism from supervisors; 7) the ability to accept instructions and respond appropriately to criticism from supervisors; 8) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; 9) the ability to respond appropriately to changes in the work setting; and 10) the ability to travel in unfamiliar places or use public transportation (Tr. 430-31).

Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  If a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927.  *Id*. at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300.  Those factors are:  (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted].  Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is

"clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight."  *Id*. at 1300 [quotation omitted].

   The ALJ discussed Dr. Zielinski's opinion as to the claimant's mental limitations and concluded: "Certain aspects of the doctor's opinion are in fact consistent with the residual functional capacity determined in this decision whereas some of his opinion contrasts sharply with the other evidence of the record and the undersigned renders it less persuasive." (Tr. 23).  This analysis was flawed for several reasons.  First, the ALJ should have assigned Dr. Zielinski's opinion appropriate weight (controlling or otherwise), *then* determined the claimant's RFC, and concluded with an explanation of any portions of the opinion that he found unpersuasive, not measured it for consistency with a predetermined RFC.  *See, e. g., Ramirez v. Astrue*, 255 Fed. Appx. 327, 332 (10th Cir. 2007) ("[T]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."), *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at * 7.  Similarly, if Dr. Zielinski's opinion *was* inconsistent with other medical evidence, the ALJ should have examined that evidence and determined if it outweighed Dr. Zielinski's opinion, not the other way around.  *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988).

   Finally, if Dr. Zielinski's opinion was not entitled to controlling weight because it *was* inconsistent with other evidence, the ALJ should have specified the inconsistencies, *see Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial

evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300; *see also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are."), and evaluated the proper weight to give the opinion. *Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

In summary, the ALJ failed to properly analyze the opinion from the claimant's treating physician. The decision of the Commissioner should therefore be reversed, and the case should be remanded to the ALJ for a proper analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. The undersigned Magistrate Judge accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings consistent herewith. Any objections to

this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

      **DATED** this 14th day of September, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma